# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RHC OPERATING, LLC, | |
| Plaintiff, | Civil Action No. 1:21-CV-09322 |
| v. | |
| CITY OF NEW YORK, and BILL DE BLASIO, in his official capacity as Mayor of New York City, and New York City Council Members – Adrienne E. Adams, Alicka Ampry-Samuel, Diana Ayala, Justin L. Brannan, Selvena N. Brooks-Powers, Fernando Cabrera, Margaret S. Chin, Robert E. Cornegy, Jr., Laurie A. Cumbo, Ruben Diaz, Sr., Darma V. Diaz, Eric Dinowitz, Daniel Dromm, Mathieu Eugene, Oswald Feliz, James F. Gennaro, Vanessa L. Gibson, Mark Gjonaj, Barry S. Grodenchik, Robert F. Holden, Corey D. Johnson, Ben Kallos, Peter A. Koo, Karen Koslowitz, Brad S. Lander, Stephen T. Levin, Alan N. Maisel, Carlos Menchaca, Francisco P. Moya, Keith Powers, Kevin C. Riley, Carlina Rivera, Ydanis A. Rodriguez, Deborah L. Rose, Helen K. Rosenthal, Rafael Salamanca, Jr., Mark Treyger, Eric A. Ulrich, Paul A. Vallone, and James G. Van Bramer, | **PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** |
| Defendants. | |

Dated: New York, New York
December 6, 2021

                                      Respectfully submitted,

                                      VENABLE LLP

                                      */s/ Michael J. Volpe*
                                      Michael J. Volpe
                                      Sarah A. Fucci
                                      1270 Avenue of the Americas, 24th Floor
                                      New York, New York 10020
                                      T: (212) 808-5676
                                      mjvolpe@venable.com

                                      *Attorneys for Petitioner RHC Operating, LLC*

**TABLE OF CONTENTS**

Introduction ........................................................................................................................... 1

Argument .............................................................................................................................. 3

   I.    Plaintiff has been and will continue to be irreparably harmed by the Law. ........................ 3

   II.   Plaintiff has a likelihood of success on the merits of its Contract Clause claims. ................ 5

Conclusion ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Structural Steel Co. v. Spannaus*,
    438 U.S. 234 (1978)..........................................................................................................7

*Andino v. Fischer*,
    555 F. Supp. 2d 418 (S.D.N.Y. 2008)................................................................................1

*Assoc. of Surrogates and Supreme Court Reporters v. New York*,
    940 F.2d 766 (2d Cir. 1991)...............................................................................................9

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    934 F.2d 30 (2d Cir. 1991).................................................................................................4

*Buckingham Corp. v. Karp*,
    762 F.2d 257 (2d Cir.1985)................................................................................................3

*Buffalo Educ. Support Team v. Tobe*,
    464 F.3d 362 (2d Cir. 2006)...........................................................................................6, 8

*Conn. State Police Union v. Rovella*,
    494 F. Supp. 3d 210 (D. Conn. 2020).................................................................................3

*Donohue v. Mangano*,
    886 F. Supp. 2d 126 (E.D.N.Y. 2012) ...............................................................................3

*East N.Y Savings Bank v. Hahn*,
    326 U.S. 230 (1945)..........................................................................................................10

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009)................................................................................................3

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*,
    841 F.3d 133 (2d Cir. 2016)................................................................................................1

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007).................................................................................................3

*Melendez v. City of New York*,
    16 F.4th 992 (2d Cir. 2021) .................................................................................5, 8, 9, 10

*Padberg v. McGrath-McKechnie*,
    108 F. Supp. 2d 177 (E.D.N.Y. 2000) ...............................................................................4


*W. B. Worthen Co. v. Thomas*,
   292 U.S. 426 (1934) ............................................................................................................. 9

**Statutes**

29 U.S.C. §§ 151-166 ............................................................................................................... 2

29 U.S.C. §§ 1001 et seq ........................................................................................................... 2

42 U.S.C. § 1983 ....................................................................................................................... 3

N.Y. Lab. L. § 570 .................................................................................................................... 2

**Other Authorities**

U.S. CONST. amend. XIV, § 1 .................................................................................................. 3

U.S. CONST., art. I, § 10, cl. 1 ........................................................................................... *passim*

Plaintiff RHC Operating, LLC ("Plaintiff" or "RHC"), through its undersigned counsel and in accordance with this Court's Order (ECF No. 25), submits this Supplemental Memorandum of Law in Support of its Application for an Order to Show Cause (ECF No. 19) for a temporary restraining order and/or preliminary injunction.

Introduction

In its Complaint (ECF No. 1) and Application for an Order to Show Cause (ECF Nos. 19-21), RHC demonstrated that the Court should enjoin enforcement of New York City Local Law Int. 2397-A (the "Law"). The Law, which was signed into effect on October 5 without meaningful consideration of its impact on hotels, purports to require Plaintiff – and numerous other New York City hotels – to pay millions of dollars in "severance" payments to certain laid-off "hotel service employees." Plaintiff projects that it alone would be liable for *more than $7 million* in severance payments under the Law. The severance liabilities imposed under the Law are over and above the *$15.4 million in severance payments already paid by Plaintiff* to the same employees pursuant to collectively bargained-for severance rights under the Industry-Wide Agreement ("IWA"). [1]

Plaintiff has already established each of the elements required for the entry of a temporary restraining order and/or preliminary injunction.[2] When "a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016) (internal

---

[1] Plaintiff respectfully refers the Court to its Complaint and Application for a thorough description of the Parties, the Law, and other pertinent background information.

[2] *See Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.").

quotation marks omitted).   Specifically, in the Complaint and Application, Plaintiff established the following:

- **Plaintiff will suffer irreparable harm unless the Court stops the enforcement of the Law.** (Complaint, ECF No. 1, ¶¶ 9, 68, 91, 100, 114, 130, 137; Application, ECF No. 19, at 4-5.) The Law violates Plaintiff's constitutionally protected rights under the Contract, Due Process, and Equal Protection clauses of the United States Constitution. These violations constitute *per se* irreparable harm for Plaintiff. In addition, the severance liabilities sought to be imposed by Defendants under the Law are so substantial that they threaten Plaintiff's viability, which constitutes irreparable harm in this Circuit.

- **Plaintiff has a likelihood of success on the merits of its claims.** (Complaint, ECF No. 1, ¶¶ 59-137; Application, ECF No. 19, at 4.) Plaintiff's allegations, which are supported by appropriate caselaw and supporting exhibits, show that the Law (a) is preempted by federal law (including the Employee Retirement Income Security Act of 1974 and the National Labor Relations Act); (b) is preempted by New York state law including the New York Labor Law; and (c) violates Plaintiff's constitutional rights.

- **The public interest weighs heavily in favor of immediately enjoining the Law.** (Complaint, ECF No. 1; Application, ECF No. 19, at 5-6.) The public interest is not furthered by the enactment of unconstitutional local laws. Nor does the public benefit from the passage of legislation that threatens financial ruin to an already-struggling hotel industry that has been ravaged by the COVID-19 pandemic. Further, because the Law permits *each hotel employee* to file a civil suit to seek payments under the Law, there is a substantial likelihood that an already-burdened judicial system will become flooded with additional litigation. None of this serves the public interest.

Plaintiff submits this Supplemental Memorandum of Law to expand upon the bases for, and further demonstrate the necessity of, enjoining the enforcement of the Law.

## Argument

### I. Plaintiff has been and will continue to be irreparably harmed by the Law.

Courts in the Second Circuit have consistently held that a showing of irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); *see also Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir.1985) ("[T]he linchpin of [preliminary injunctive] relief is that threatened irreparable harm will be prevented by that injunction."). The purpose of immediate injunctive relief is to maintain the status quo, because irreparable harm (by definition) "cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted). The Court should enjoin enforcement of the Law in order to maintain the status quo pending a final judgment in this action.

First, the violation of Plaintiff's constitutional rights under the Contract, Due Process, and Equal Protection clauses of the United States Constitution is *per se* irreparable harm. Being denied constitutional rights for the pendency of litigation simply cannot be remedied after the fact. *See Conn. State Police Union v. Rovella*, 494 F. Supp. 3d 210, 220 (D. Conn. 2020) ("It is generally held that an alleged deprivation of constitutional rights—*including rights violated under the Contracts Clause*—raises a presumption of irreparable harm.") (internal citations and quotations omitted) (emphasis added); *see also Donohue v. Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012) (holding that a presumption of irreparable harm for constitutional violations is not "just limited to violations of free speech or due process but may include violations of the Contract

3

Clause as well."). This *per se* irreparable harm is in itself more than sufficient to support the entry of a temporary restraining order and/or preliminary injunction in this matter.

Second, it is well established that irreparable harm exists when a party is likely to suffer monetary losses so substantial that it threatens the party's financial viability or will force the party into bankruptcy. Simply put, a monetary judgment at the conclusion of years-long litigation is of little help to a party that was forced out of business, forced into bankruptcy, or forced to undergo painful and irreversible corporate restructuring in order to cope with crushing financial burdens that were imposed during the course of the litigation. *See Padberg v. McGrath-McKechnie*, 108 F. Supp. 2d 177, 182 (E.D.N.Y. 2000) (irreparable harm exists where such harm would force a plaintiff into bankruptcy or would otherwise threaten "the continuing viability of a party's business"); *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir. 1991) ("Such evidence [of damages that cannot be rectified by financial compensation] might include, for example, proof that the monetary loss will probably force the party into bankruptcy.").

As alleged in the Declaration of Faisal Ghaffar (ECF No. 21), Plaintiff simply does not have the reserves necessary to cover its financial obligations that are projected under the Law. As such, Plaintiff may ultimately become insolvent, go out of business, declare bankruptcy, or undergo fundamental restructuring or down-sizing to shoulder the heavy burdens of the Law. A monetary judgment awarded at some unknown future date cannot cure these types of harms. The harm will have already been done, and it will be irreparable. The Court should enjoin the enforcement of the Law and preserve the status quo in order to prevent Plaintiff – and an untold number of other New York City hotels – from facing financial ruin.

Maintaining the status quo is an additional consideration for preventing irreparable harm. As discussed in the Complaint, the IWA requires that disputes between the Union and parties

bound by the IWA be submitted to the arbitrator known as the Impartial Chairperson ("IC"). In the past, the Union has shown a liberal willingness to use the IC to demand "emergency" hearings.[3] On this basis, the Union may upset the status quo by requesting a hearing in front of the IC on behalf of all employees and seek an industry-wide award. Given how quickly the Union and the IC typically act in scheduling these "emergency" hearings, there is a high likelihood that such an award could be issued before this Court can issue a final ruling on the constitutionality of the Law. Such an award would create additional judicial inefficiencies as well as make it administratively complicated, if not impossible, to recoup any money paid out pursuant to any award if the Law were eventually struck down.

## II.     Plaintiff has a likelihood of success on the merits of its Contract Clause claims.[4]

In Count Five of the Complaint, Plaintiff has pleaded a claim under the Contract Clause of the United States Constitution. This claim has a high likelihood of success on the merits based on the plain terms of the IWA (ECF No. 1-2), the collectively-bargained for agreement between hotels and unionized hotel employees in the City.

The IWA is a valid, binding contract between the Union and the Hotel Association of New York City, Inc. ("HANYC"). Under Article 1, Section 10 of the United States Constitution, "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. CONST., art. I, § 10, cl. 1. To determine whether a law violates the Contract Clause, courts "pose three questions to be answered in succession: (1) is the contractual impairment substantial and, if so, (2) does the law

---

[3]     Since around October 2020, the Union has requested in excess of a dozen hearings before the IC on an "emergency" basis.

[4]     In the Complaint, the Application, and the supporting exhibits, Plaintiff demonstrated a likelihood of success on the merits of *each* of its pleaded claims. This Supplemental Memorandum of Law expands upon the likelihood of success on Plaintiff's claim under the Contract Clause and addresses the impact of the Second Circuit's recent decision in *Melendez v. City of New York,* 16 F.4th 992 (2d Cir. 2021).

serve a legitimate public purpose such as remedying a general social or economic problem and, if such purpose is demonstrated, (3) are the means chosen to accomplish this purpose reasonable and necessary." *Buffalo Educ. Support Team v. Tobe*, 464 F.3d 362, 368 (2d Cir. 2006). In the Complaint, Plaintiff has alleged that the Law violates the Contract Clause. Among other things, the Law severely and substantially impairs the parties' obligations under the IWA by: (a) requiring additional severance payments *in addition to* those that were bargained-for and have already been paid by Plaintiff (Article 52); and (b) creating a private cause of action for Union members to sue Plaintiff and other hotels for alleged violations of the Law, in plain violation of the provisions of the IWA requiring that all disputes between the parties must be resolved through arbitration (Article 26). (Compl., ECF No. 1, ¶¶ 104-105.)

In addition to the aforementioned examples of severe, substantial impairment alleged in the Complaint, the Law is also violative of the Contract Clause insofar as it alters the *timing of end of employment severance payments* under Article 57 of the IWA. Article 57 provides:

> "[i]f, during the term of [the IWA], a signatory Hotel *is converted* to residential use (e.g., a condominium or co-operative use of the building, apartment rental units, etc.), the Employer shall pay to the affected employees, i.e., those who suffer a permanent loss of employment *due to such conversion*, severance under the following terms: fifteen (15) days for each year of service, calculated and paid under the procedures of Article 52(B)."

(emphasis added.) By the plain language of Article 57, end-of-employment severance payments are only due under the IWA to affected employees once the hotel in question has actually completed the conversion process. The conversion then ends the employment relationship.

The Law substantially interferes with Article 57 by fundamentally altering the timing of end-of-employment severance payments required due to a hotel's conversion. Contrary to Article 57 of the IWA, the Law requires severance payments (of no less than 20 days per year of service)

6

once a hotel has actually converted to an alternate use "*or is in the process of converting to an alternate use.*" Int. No. 2397-A (ECF No. 1-1) (emphasis added).

This is a severe and substantial impairment to the IWA, in part, because it significantly undermines the Roosevelt's "reasonable expectations" by requiring severance payments *during the process of conversion* rather than after the conversion is complete. This distinction substantially impacts the IWA, as it may require owners to take out loans to pay severance while undergoing a conversion, or to forgo conversion altogether to avoid the costs now associated with the process of converting. *See Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 247 (1978) (finding a Contract Clause violation where the Law "imposes a completely unexpected liability in potentially disabling amounts").

Prior to the passage of the Law, if an owner of a covered hotel sought to convert a hotel to residential use, the owner could take solace in the fact that end-of-employment severance payments would not be due under the IWA until the hotel actually completed the conversion process. This timing would allow the converted hotel to defer severance payments until all necessary transactions had taken place and the converted hotel was in position to generate income. This provision was bargained for by signatories to the IWA, and hotel owners like Plaintiff can and should be able to rely on it – especially in these tumultuous times – in making business decisions about alternative uses of struggling hotel properties.

Furthermore, even if Defendants can demonstrate that the Law serves a "legitimate public purpose," they cannot show that the "means chosen to accomplish this purpose [are] reasonable and necessary." *Buffalo Educ.*, 464 F.3d at 368. In *Melendez v. City of New York,* 16 F.4th 992 (2d Cir. 2021), the Second Circuit conducted a comprehensive review of Supreme Court Contract Clause precedent and reversed a district court's dismissal of a Contract Clause claim attacking a

New York City law that was hastily passed in response to the COVID-19 pandemic. In *Melendez*, the City ordinance at issue invalidated personal guaranties of commercial lease obligations for a period of 16 months, thus releasing individuals who signed such provisions from their liabilities under the leases for the professed public purpose of "help[ing] shuttered small businesses survive the pandemic so that they can reopen after the emergency, ensuring functioning neighborhoods throughout the City." *Id.* at 1040.

In determining that the Plaintiff had stated a Contract Clause claim, the Second Circuit concluded that the guaranty law was neither reasonable nor appropriate for the following reasons: 1) the relief was *not temporary* in that it extinguished rent obligations for 16 months; 2) the law did not condition relief on any requirement that businesses actually re-open; 3) the allocation of the economic burden was unfairly placed entirely on a discrete group of private persons—commercial landlords—even though they did *not cause* the circumstances warranting relief; 4) benefits were not conditioned on *need/personal hardship* like other pandemic relief; 5) the *lack of empirical evidence in the record* to indicate that the City Council had studied the effectiveness and consequences of the guaranty law; and 6) the law's failure to provide landlords any compensation for damages or losses sustained as a result of impairing guaranties. *Id.* at 1039-46.

The Law in this case presents the same problems as the guaranty law in *Melendez*. For example, the Law is not based on need. The employment status or need of the individual hotel employees is not accounted for and not relevant under the Law, and there is no indication that the City Council reviewed or considered any statistics regarding income and unemployment or underemployment levels among the City's hotel workers. *See W. B. Worthen Co. v. Thomas*, 292 U.S. 426, 434 (1934) (finding a Contract Clause violation where the law in question "contains no limitations as to time, amount, *circumstances, or need*.") (emphasis added). Indeed, here it appears

City Council did nothing in terms of analysis other than rely on the lobbying of the Union. *See id.* at 1043 (noting that, while legislators may act based on "the general or typical situation," they must show more than "anecdotal or conclusory statements by Council members").

Additionally, here it is private hotel owners (like the guarantors in *Melendez*), not the City nor the public at large, that are responsible for bearing the burden of these severance payments without any compensation for their losses, a fact that weighs in favor of finding that the Law does not employ reasonable and appropriate means to advance its purported goal. *See id.* at 1045-46. In *Assoc. of Surrogates and Supreme Court Reporters v. New York*, 940 F.2d 766 (2d Cir. 1991), which was discussed in *Melendez*, a state payroll lag resulted in judicial employees being deprived of ten days' pay over a 20-week period, with the deprivation to be paid back upon the termination of employment. The Court found that the lag payroll scheme violated the Contract Clause in part because it placed costs "on the few shoulders of judiciary employees instead of the many shoulders of the citizens of the state." *Id.* at 773. The City has the authority to raise taxes or utilize other administrative tools to fund severance payments for hotel employees if it truly believes that would be a worthwhile use of public funds. However, by placing the burden solely on private hotel owners that are not responsible for the conditions which led to the public harm that Defendants are allegedly seeking to mitigate, the City has violated the Contract Clause. *See Melendez*, 16 F.4th 992 at 1042.

As discussed in *Melendez*, when analyzing contract impairment, the Supreme Court has indicated that courts should review the "whole course of [the] legislation" at issue, and has emphasized that there is typically no unconstitutional impairment where it is shown that "the empirical process of [the] legislation [is] at its fairest: frequent reconsideration, intensive study of the consequences of what has been done, readjustment to changing conditions, and safeguarding

9

the future on the basis of responsible forecasts." *Id.* at 1045 (discussing *East N.Y Savings Bank v. Hahn*, 326 U.S. 230 (1945)). In this case, Defendants' slipshod process for passing the Law bore none of these characteristics. This demands judicial scrutiny.

Finally, in *Melendez*, the Second Circuit remanded its reversal back to the district court to allow the parties to develop the record on the vital questions it raised regarding the reasonableness and appropriateness of the guaranty law. *Id.* at 1047. Accordingly, this Court should permit Plaintiff to commence discovery after enjoining the Law.

## Conclusion

For the reasons set forth herein, and the reasons previously articulated in the Complaint and Application, the Court should grant the requested temporary restraining order and/or preliminary injunction.

Dated: New York, New York
       December 6, 2021

>                                Respectfully submitted,
>
>                                /s/ Michael J. Volpe
>                                VENABLE LLP
>                                Michael J. Volpe
>                                1270 Avenue of the Americas, 24th Floor
>                                New York, New York 10020
>                                T: (212) 808-5676
>                                mjvolpe@venable.com
>
>                                *Attorneys for Plaintiff RHC Operating, LLC*