No. 21-CV-9322 (JPO)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RHC OPERATING LLC,

                                                                    Plaintiff,

                              -against-

CITY OF NEW YORK, and BILL DE BLASIO, in his
official capacity as Mayor of New York City, and New
York City Council Members—Adrienne E. Adams, Alicka
Ampry-Samuel, Diana Ayala, Justin L. Brannan, Selvena
N. Brooks-Powers, Fernando Cabrera, Margaret S. Chin,
Robert E. Cornegy, Jr., Laurie A. Cumbo, Ruben Diaz,
Sr., Darma V. Diaz, Eric Dinowitz, Daniel Dromm,
Mathieu Eugene, Oswald Feliz, James F. Gennaro,
Vanessa L. Gibson, Mark Gjonaj, Barry S. Grodenchik,
Robert F. Holden, Corey D. Johnson, Ben Kallos, Peter A.
Koo, Karen Koslowitz, Brad S. Lander, Stephen T. Levin,
Alan N. Maisel, Carlos Menchaca, Francisco P. Moya,
Keith Powers, Kevin C. Riley, Carlina Rivera, Ydanis A.
Rodriguez, Deborah L. Rose, Helen K. Rosenthal, Rafael
Salamanca, Jr., Mark Treyger, Eric A. Ulrich, Paul A.
Vallone, and James G. Van Bramer,

                                                                    Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR A
TEMPORARY/PRELIMINARY INJUNCTION**

***GEORGIA M. PESTANA***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel:  Melanie V. Sadok*
*Tel:  (212) 356-4371*
*Matter No. 2021-038962*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT AND BACKGROUND ............................................................. 1

ARGUMENT ................................................................................................................ 3

    PLAINTIFF HAS FAILED TO ESTABLISH THAT IT IS ENTITLED TO THE DRASTIC REMEDY OF TEMPORARY OR PRELIMINARY INJUNCTIVE RELIEF ......................................................................................................... 3

    A. Plaintiff Has Failed to Show that Irreparable Harm Would Result if a Temporary Restraining Order is Not Granted ................................................................................................ 5

    B. A Temporary Restraining Order Is Not in the Public Interest ...................................................................................... 7

    C. The Severance Law Does Not Violate the Constitution's Contracts Clause ................................................................... 8

        (a) There is No Contractual Relationship at Issue ............................. 9

        (b) The Law Does not Substantially Impair the IWA ..................... 10

        (c) The Law Serves a Public Purpose and is Reasonable and Appropriate .......................................................... 13

    D. The Severance Law is Not Unconstitutionally Vague .................... 16

    E. Plaintiff's Substantive Due Process Rights Have Not Been Violated .......................................................................... 18

    F. Equal protection ...................................................................... 19

    G. Plaintiff is not Likely to Succeed on its Claim of ERISA Preemption ........................................................................... 21

    H. Plaintiff is not Likely to Succeed on its Claim of National Labor Relations Act (NLRA) Preemption ...................................... 24

**Pages**

# TABLE OF AUTHORITIES

**Cases**

*520 S. Mich. Ave. Assocs., Ltd. v. Shannon,*
    549 F.3d 1119 (7th Cir. 2008).................................................................25

*Ambrose v. City of White Plains,*
    2018 WL 1635498, *18 (S.D.N.Y. 2018),
    *aff'd, Barr v. City of White Plains*, 779 F App'x 765 (2d Cir. 2019)..............10

*Andino v. Fischer,*
    555 F. Supp. 2d 418 (S.D.N.Y. 2008)........................................................3

*Arriaga v. Mukasey,*
    521 F3d 219 (2d Cir 2008)......................................................................16

*Atkins v. CB&I, L.L.C.,*
    991 F.3d 667 (5th Cir. 2021) ..................................................................23

*Barr v. City of White Plains,*
    779 F. App'x 765 (2d Cir. 2019)..............................................................14

*Bd. of County Commrs. v. E. Prince Frederick Corp.,*
    80 Md App 78, 559 A2d 822 (1989) ........................................................13

*Beatie v. City of New York,*
    123 F.3d 707 (2d Cir. 1997) ...................................................................19

*Broecker v. New York City Dep't of Educ.,*
    2021 WL 226848 (S.D.N.Y. Nov. 24, 2021).................................................7

*Buffalo Teachers Fedn. v. Tobe,*
    464 F3d 362 (2d Cir. 2006) ....................................................................12

*California Grocers Assoc, v. City of Long Beach,*
    2021 WL 3500960 (C.D. Cal. Aug. 9, 2021)...............................................11

*California v. Texas,*
    141 S.Ct. 2104 (2021).............................................................................5

*Capitol Pedicabs, LLC. v. City of New York,*
    2017 U.S. Dist. LEXIS 163994 (S.D.N.Y. 2017) .........................................20

*Citibank, N.A. v. Cityrust,*
    756 F.2d 271 (2d Cir. 1985) .....................................................................7

*City of Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985)................................................................19

*Concerned Home Care Providers, Inc. v. Cuomo*,
   783 F.3d 77 (2d Cir. 2015)........................................................25

*Copeland v. Vance*,
   893 F.3d 101 (2d Cir. 2018)......................................................18

*Dickerson v. Napolitano*,
   604 F.3d 732 (2d Cir. 2010)......................................................17

*Donohue v. Paterson*,
   715 F. Supp. 2d 306 (N.D.N.Y. 2010)................................10, 12

*Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*,
   459 U.S. 400 (1983)..............................................................8, 14

*Exxon Corp. v. Busbee*,
   644 F.2d 1030 (5th Cir), *cert. denied*, 454 U.S. 932 (1981).........17

*Ferran v. Town of Nassau*,
   471 F.3d 363 (2d Cir. 2006)......................................................19

*Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*,
   2009 WL 790312 (E.D.N.Y. Mar. 23, 2009)................................6

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005).......................................................6

*Gen.Offshore Corp. v. Farrelly*,
   743 F. Supp. 1177 (D.V.I. 1990)...............................................11

*General Motors Corp. v. Romein*,
   503 U.S. 181 (1992)................................................................11

*Golden Gate Rest. Ass'n v. County of San Francisco*,
   546 F.3d 639 (9th Cir. 2008).....................................................23

*Grande River Enter Six Nations, Ltd. V. Pryor*,
   481 F.3d 60 (2d Cir. 2007).........................................................4

*Hagar v. Reclamation Dist. No. 108*,
   111 US 701 (1884)....................................................................9

*Heller v. Doe*,
   509 U.S. 312 (1993)................................................................21

*Home Bldg. & Loan Ass'n v. Blaisdell*,
   290 U.S. 398 (1934)..............................................................8, 10

*James v. Fleet/Norstar Fin. Group*,
   992 F.2d 463 (2d Cir. 1993) ..................................................................................22, 23

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
   480 U.S. 470 (1987) ..................................................................................................15

*Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin*
   *Employment Relations Comm'n*,
   427 U.S. 132 (1976) ..................................................................................................24

*Lowrance v. C.O. S. Achtyl*,
   20 F.3d 529 (2d Cir. 1994) ......................................................................................19

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*,
   75 F. Supp. 3d 592 (S.D.N.Y. 2014) ........................................................................6

*Melendez v. City of New York*
   (2d Cir. No. 20-4238), ECF No. 149 .......................................................................15

*Melendez v. City of NY*,
   2021 16 F.4th 992 (2d Cir. 2021 ........................................................................15, 16

*Metropolitan Life Ins. Co. v. Mass.*,
   471 U.S. 724 (1985) ..................................................................................................24

*Moore v. Consol. Edison Co.*,
   409 F.3d 506 (2d Cir. 2005) ......................................................................................4

*New York State Rifle & Pistol Ass'n v. Cuomo*,
   804 F.3d 242 (2d Cir. 2014) ....................................................................................18

*Oeoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*,
   769 F.3d 105 (2d Cir. 2014) ......................................................................................4

*Okun v. Montefiore Med. Ctr.*,
   793 F.3d 277 (2d Cir. 2015) ..........................................................................21, 22, 23

*Oneida Nation of N.Y. v. Cuomo*,
   645 F.3d 154 (2d Cir. 2011) ......................................................................................4

*Plaza Motors of Brooklyn, Inc. v. Cuomo*,
   No. 20-CV-4851, 2021 WL 222121 (E.D.N.Y. Jan. 22, 2021) ..............................4, 20

*Rhode Island Hospitality Ass'n v. City of Providence*,
   667 F.3d 17 (1st Cir. 2011) ................................................................................10, 11

*Rodriguez by Rodriguez v. DeBuono*,
   175 F.3d 227 (2d Cir. 1998) ......................................................................................5

*Rondout Elec., Inc. v. N.Y. State DOL*,
   335 F.3d 162 (2d Cir. 2003) ..............................................................................24, 25

*Russell v. Allied Textile Cos., Plc (in Re Carleton Woolen Mills, Inc.)*,
  288 B.R. 7 (Bank Ct. D. of Maine 2003) ............................................................ 9, 10

*S. Cal. Healthcare Sys. v. City of Culver City*,
  2021 WL 3160524 (C.D. Cal. July 23, 2021) .......................................................... 11

*Sal Tinnerello & Sons, Inc. v. Town of Stonington*,
  141 F.3d 46 (2d Cir. 1998) .......................................................................... 15

*Schonholz v. Long Island Jewish Med. Ctr.*,
  87 F.3d 72 (2d Cir. 1996) ........................................................................ 21, 22

*Slattery v. Cuomo*,
  2021 WL 1224008 (N.D.N.Y. Mar. 31, 2021) ........................................................ 17

*Smith v Evening News Assn.*,
  371 U.S. 195 (1962) ................................................................................ 11

*Stoneridge Apts., Co. v. Lindsay*,
  303 F Supp 677 (S.D.N.Y. 1969) .................................................................... 9

*Sveen v. Melin*,
  138 S. Ct. 1815 (2018) ........................................................................... 8, 12

*Thibodeau v. Portuondo*,
  486 F.3d 61 (2d Cir. 2007) ......................................................................... 16

*Toney-Dick v. Doar*,
  2013 WL 1314954 (S.D.N.Y. Mar. 18, 2013) ......................................................... 6

*U.S. Trust Co. v. New Jersey*,
  431 U.S. 1 (1977) ................................................................................... 8

*United States v. Peters*,
  732 F.3d 93 (2d Cir. 2013) ......................................................................... 17

*United States v. Raines*,
  362 U.S. 17 (1960) ................................................................................. 17

*United States v Yücel*,
  97 F. Supp 3d 413 (S.D.N.Y. 2015) ................................................................. 17

*Usery v. Turner Elkhorn Mining Co.*,
  428 U.S. 1 (1976) .................................................................................. 18

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982) ................................................................................ 17

*Vill. of Willowbrook v. Olech*,
  528 U.S. 562 (2000) ............................................................................. 19, 20

*Vizio Inc. v. Klee,*
    2016 WL 1305116 (D. Conn. 2016)..................................................................18, 21

*West Coast Hotel Co. v.Parrish,*
    300 U.S. 379 (1937)...........................................................................................13

*Whole Woman's Health v. Jackson,*
    141 S.Ct. 2494 (2021).........................................................................................5

**Statutes**

22 U.S.C. § 4102(6).....................................................................................................18

**PRELIMINARY STATEMENT AND BACKGROUND**

Plaintiff challenges New York City Local Law 104 of 2021 (the "Severance Law" or the "Law"), a law designed to provide short-term financial assistance to hotel service workers who were laid off during the COVID-19 pandemic, as well as to encourage the reopening of hotels to boost tourism in New York City. The arrival of the COVID-19 pandemic in March 2020 had severe economic consequences for New York City. Among those consequences was a steep decline in tourism, the closure of many hotels in New York City and the unemployment of thousands of hotel service workers. *See* The Council of The City of New York, Committee Report of the Governmental Affairs Division, Committee on Consumer Affairs And Business Licensing, pp. 22-24 (Sept. 15, 2021) (the "Sept. 15 Committee Report") annexed as Exhibit 1 to the Declaration of Rachel Kane, dated December 14, 2021 ("Kane Decl.").

Recognizing this impact, the City of New York (the "City") acted, passing a number of laws designed to alleviate the impact of the pandemic on New Yorkers and the City's economic health, including laws to protect workers, tenants, restaurants, property owners, and now hotel workers and the hotel industry. While conditions have improved over time, the hotel industry has not yet fully recovered, and the City and State expect a loss of approximately $1.3 billion in tax revenue from the impact of the hotel industry. *See* Kane Decl. Ex. 1 at 22-24. As of September 2021, when temporary supplemental federal unemployment benefits were set to expire, as many as sixty percent of the approximately 300,000 hotel workers in New York City remained unemployed. *See id.*

In response to this continuing situation, and in an effort to "improv[e] the economic lives of working New Yorkers" and to incentivize hotels to reopen, on October 5, 2021, the City enacted the Severance Law. The Council of the City of New York, Committee on Consumer Affairs and

Business Licensing, Transcript of Hearing on Introductions 499, 508, 974, 2318 and 2397 at 15:10-16:22, 24:4-10 (Sept. 15, 2021), annexed as Exhibit 2 to the Kane Decl.

The Severance Law requires that hotels that had more than 100 rooms as of March 1, 2020 (prior to the steep decline in tourism caused by the pandemic), and that either closed or laid off more than seventy-five percent of their employees during any thirty-day period (a "mass layoff") after March 1, 2020, pay a fixed amount of severance to certain former employees on a weekly basis for a maximum of thirty weeks. Hotels are excluded from coverage under the law if they (a) recalled at least twenty-five percent of their employees prior to October 11, 2021, and reopened prior to November 1, 2021, (b) closed permanently and have been converted, or are being converted, to another use, provided they offer severance to former employees in connection with that conversion,[1] or (c) closed due to a lockout or a strike. Severance Law §§ 1, 3. In addition, a hotel that had closed after March 1, 2020, and reopens after November 1, ceases to have any obligation to pay severance under the Law as of the date it reopens, provided it has recalled at least twenty-five percent of the employees it employed as of March 1, 2020. *Id.* § 3(b).

Plaintiff, a covered hotel under the Law, seeks temporary and preliminary injunctive relief enjoining the enforcement of the Law. Plaintiff alleges that the Law violates its constitutional rights, in particular by violating the Contracts, Due Process, and Equal Protection Clauses. Plaintiff also asserts that the Law is preempted by the federal Employee Retirement Income Security Act ("ERISA"), the federal National Labor Relations Act, as well as the New York State Employment Relations Act and Unemployment Insurance Law.

---

[1] In order to qualify for this exemption, a permanently closed hotel must offer severance pay to former employees who would otherwise have been entitled to severance pay under the Law "specifically for such conversion in an amount that equals no less than pay for 20 days per year of service, at the same rate that such employee is paid for paid days off." Severance Law § 3(a).

Plaintiff is not entitled to temporary or preliminary injunctive relief. Plaintiff has failed to meet its burden of demonstrating irreparable harm. Plaintiff's allegations of "insolvency" are speculative and unsupported. Further, an injunction is not in the public's best interest. Finally, Plaintiff is not likely to succeed on the merits of any of its federal claims.[2] Plaintiff's Contracts Clause claim, which is the only claim Plaintiff briefed in support of its motion,[3] is not likely to succeed as Plaintiff has not established through the pleadings that a contractual relationship even exists. Plaintiff's due process and equal protection claims are also unlikely to succeed because the Law is an economic and social regulation that does not implicate a protected class or fundamental rights and thus is entitled to a presumption of constitutionality and substantial deference. Finally, Plaintiff's preemption arguments will also fail. The Severance Law does not require establishment of an ERISA plan, nor does it interfere with the process of collective bargaining. Rather, it creates a minimum labor standard that is not preempted. Thus, as more fully explained below, Plaintiff's motion for a temporary and preliminary injunction should be denied in its entirety.

## ARGUMENT

## PLAINTIFF HAS FAILED TO ESTABLISH THAT IT IS ENTITLED TO THE DRASTIC REMEDY OF TEMPORARY OR PRELIMINARY INJUNCTIVE RELIEF

In is well established that in the Second Circuit "the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). The TRO and preliminary injunction are extraordinary and drastic remed[ies] "that 'should

---

[2] Plaintiff is not likely to succeed on the merits of its State preemption claims either. The NY State laws Plaintiff claims preempt the Law address different fields. Unemployment insurance is not the same as severance pay, and the language of the Unemployment Insurance Law makes that clear. The Employment Relation Act governs the procedures of collective bargaining, and not the substance. Defendants have not fully briefed these arguments because Plaintiff's motion did not address them the Court need not exercise supplemental jurisdiction over them.

[3] Plaintiff's initial memorandum of law in support of its motion did not address its likelihood of success on the merits of any of its claims. *See* ECF 19. The Court provided Plaintiff with the opportunity to supplement its briefing and on December 6, 2021 Plaintiff filed a supplemental memorandum of law that only briefly addressed the merits of its Contracts Clause claim. *See* ECF 30.

not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Grande River Enter Six Nations, Ltd. V. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (*quoting Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005))."[C]ourts generally grant preliminary injunctions only 'where a plaintiff demonstrates "irreparable harm" and meets one of two related standards: "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party."' *Plaza Motors of Brooklyn, Inc. v. Cuomo*, No. 20-CV-4851, 2021 WL 222121, at *10 (E.D.N.Y. Jan. 22, 2021) (quoting *Oeoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014)). However, "the less rigorous fair-ground-for-litigation standard" is not available here, "where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme." *Plaza Motors*, 2021 WL 222121, at *10 (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989)). "This exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Plaza Motors,* 2021 WL 222121, at *10 (quoting *Able*, 44 F.3d at 131). "The moving party also must demonstrate a preliminary injunction is in the public interest." *Plaza Motors*, 2021 WL 222121, at *10-11 (citing *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)).

As a preliminary matter, to the extent Plaintiff seeks to enjoin the Severance Law,[4] the Supreme Court has recently made clear that the Courts cannot enjoin a law, but may only enjoin

---

[4] Plaintiff argues that it will incur "extreme economic burdens" if the Severance Law is "permitted to stand" (Supp. Mem. 2; *see also id.* 5 (alleging economic harm "if the Law is left to stand")). Additionally, the proposed order states that "it is in the public interest to enjoin this Law." ECF 22. Elsewhere in Plaintiff's briefing, Plaintiff seeks to enjoin enforcement of the Law.

those responsible for enforcing the law. To the extent Plaintiff seeks to enjoin enforcement of the Law, as the Defendants have no enforcement power, no injunction against Defendants may ensue. *See Whole Woman's Health v. Jackson*, 141 S.Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves.") (citing *California v. Texas*, 141 S.Ct. 2104, 2115-2116 (2021)). Thus, the temporary or preliminary injunctive relief sought is not available.

## A.   Plaintiff Has Failed to Demonstrate Irreparable Harm

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez by Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1998) (internal citations omitted). Plaintiff claims to have demonstrated "per se" irreparable harm, as it alleges constitutional violations under the Contract Clause, the Due Process Clause, and the Equal Protection Clause of the United States Constitution. Pl. Br. at 4. Plaintiff also claims economic harm, asserting that Plaintiff's "solvency" is "threaten[ed]" by reopening the hotel or alternatively paying the severance, and defending any potential litigation. Ghaffar Decl. ¶ 8-10; *see also*, *e.g.*, Compl. ¶¶ 68, 91 and 100. In its Supplemental Memorandum, Plaintiff also asserts that if the injunction it seeks is not granted, the Union may demand "emergency" hearings in the meantime and win an industry-wide award to enforce the Law on behalf of all employees to which it applies, "creat[ing] judicial inefficiencies" and making any eventual economic recovery more difficult "if the Law were eventually struck down." Pl. Supp. Mem. 4-5.

Plaintiff will not suffer *per se* irreparable harm absent injunctive relief because, as set forth below, Plaintiff's constitutional claims lack merit. *See*, *e.g.*, *L.T. v. Zucker*, WL 4775215 (N.D.N.Y. Oct. 13, 2021) (holding that plaintiffs seeking to enjoin enforcement of COVID-19-related mask mandate failed to show irreparable harm predicated on Constitutional infringement because they did not demonstrate that they were likely to prevail on their First Amendment claim).

Plaintiff's allegations in the Complaint and its moving papers about potential economic harms are insufficient to establish that it faces an irreparable injury because they lack specificity and are speculative. A plaintiff must demonstrate that the injury it will suffer "'is neither remote nor speculative, but actual and imminent.'" *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting *Rodriguez by Rodriguez v. DeBuono*, 175 F.3d 227, 234-35 (2d Cir. 1998)); *Grand River*, 481 F.3 at 66 (citations omitted). Here, Plaintiff's conclusory statements about potential future insolvency or bankruptcy resulting from compliance with the Law lack specificity and are purely speculative because Plaintiff does not explain the effect that making severance payments (or defending against lawsuits after refusing to pay) would have on its balance sheet or what separate obligations it would be unable to meet as a result. Nor does Plaintiff provide an estimate of the weekly or monthly amount of severance payments it would owe under the Law or indicate at what point it contends it would be unable to continue to make such payments. Such non-specific claims cannot establish that Plaintiff will imminently suffer irreparable harm. *See*, *e.g.*, *Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*, 2009 WL 790312, at *8 (E.D.N.Y. Mar. 23, 2009) (denying corporations' motion for a preliminary injunction to compel payment by insurance company where, among other things, corporations had not demonstrated that they were "in danger of imminent insolvency"). Further, Plaintiff does not allege that any lawsuits have been commenced, or even threatened, thus far.[5] And Plaintiff's conjecture that the Union might quickly seek an industry-wide arbitration award to enforce the Law against employers appears to be based

---

[5] In any event, Plaintiff cannot establish that the injunction it actually seeks would avert alleged irreparable harm in the form of litigation expenses resulting from lawsuits by private individuals. To the extent that Plaintiff seeks injunctive relief "to stop Defendants from enforcing" the Law (Pl. Br. 1), such relief would not prevent private individuals from seeking to enforce the Law through lawsuits. "When considering irreparable harm, 'the injunction must address the injury alleged to be irreparable — the Court should not grant the injunction if it would not so prevent that injury.'" *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 606-07 (S.D.N.Y. 2014) (quoting *Toney-Dick v. Doar*, 2013 WL 1314954, *9 (S.D.N.Y. Mar. 18, 2013).

only on the Union's past "liberal willingness to use the IC to demand 'emergency' hearings." Pl. Supp. Mem. 3-4. Because Plaintiff can only speculate as to the possibility of these harms, they do not support Plaintiff's application for injunctive relief.

Moreover, Plaintiff's claims of immediate irreparable harm are undermined by its delay in seeking preliminary relief. *See Citibank, N.A. v. Cityrust*, 756 F.2d 271, 276 (2d Cir. 1985) (holding delay in seeking preliminary injunction undercuts claims of "urgent need" for "such, drastic speedy action" to protect plaintiff's rights); *Broecker v. New York City Dep't of Educ.*, 2021 WL 226848 (S.D.N.Y. Nov. 24, 2021).. The Severance Law became effective on October 5, 2021, yet Plaintiff did not seek a TRO/PI until November 18, 2021. Plaintiff states that it waited to seek emergency relief because it wanted to first attempt to reach agreement with the Union "regarding the Law's applicability" (Plaintiff's Application for OSC (ECF Doc. No. 19) p.3) but provides no basis to believe that it had a reasonable expectation that the Union could or would alter the Law's application to its hotel.

**B.    A Temporary Restraining Order Is Not in the Public Interest.**

Plaintiff argues that an injunction is in the public interest because the Law is unconstitutional, it would harm the hotel industry in New York City, the Law was passed in a short timeframe with little debate, and the Law might possibly lead to many lawsuits by former hotel employees seeking payments pursuant to the Law. Pl. Br. at 5-6. Plaintiff's view of the harms that may result to the hotel industry in the New York City is unsupported, speculative, self-serving, and insufficient to prevail on this prong. As stated above, Plaintiff's constitutional claims lack merit. Plaintiff's remaining arguments address purported harm to Plaintiff, not to the public. [6]

---

[6] Plaintiff argues that "[t]he public interest requires that this Law be enjoined." Supp. Mem. 5.  As noted above, federal courts can enjoin those tasked with enforcing a law, but not the law itself.

As explained below, the Law was enacted in the public interest. The Law provides short-term financial relief to a part of the City workforce that has faced, and continues to face, high rates of unemployment as a result of the COVID-19 pandemic. It is also intended to incentivize the reopening of the hotel industry, a key part of the tourism industry which in turn plays a significant role in the City's economic well-being. Thus, as Plaintiff has not shown that a temporary restraining order is in the public's interest, Plaintiff's motion for temporary or preliminary injunctive relief must be denied.

**C.     The Severance Law Does Not Violate the Constitution's Contracts Clause**

Plaintiff's claim that the Severance Law violates the Contracts Clause of the United States Constitution, Compl. ¶ 151, is not likely to succeed. The Contracts Clause—which is found in Article I, Section 10, Clause 1 of the Constitution—provides that "[n]o State shall pass any . . . Law . . . impairing the Obligation of Contracts." But the prohibition on contractual impairment is "not an absolute one and is not to be read with literal exactness like a mathematical formula." *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 21 (1977) (quotation marks omitted). Legislatures retain "broad power" to adopt generally applicable laws "without being concerned that private contracts will be impaired, or even destroyed, as a result." *Id.* at 22. This is especially true where the government is acting to "safeguard the vital interests of its people," and to "protect the public health." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434, 436 (1934).

In order to establish a Contracts Clause claim, a plaintiff must establish three elements: First, the challenged law must substantially impair an existing contract. *See Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983). Second, if there is a substantial impairment, courts consider if the challenged law serves a legitimate public purpose. *Id.* If the law serves a legitimate public purpose, courts then consider if the law is appropriate and reasonable to achieve that purpose. *Id.* at 412; *Sveen v. Melin*, 138 S. Ct. 1815, 1821-22 (2018).

8

### (a) <u>There is No Contractual Relationship at Issue</u>

As a threshold matter, Plaintiff here fails to establish a violation of the Contracts Clause because it has not pled a contractual relationship that has been infringed. "The [Contracts] clause is clearly intended to protect *benefits and rights of a party under a contract*…." *Stoneridge Apts., Co. v. Lindsay*, 303 F Supp 677, 679 (S.D.N.Y. 1969) (emphasis added); *see also Hagar v. Reclamation Dist. No. 108*, 111 US 701, 712-13 (1884) ("The plaintiff is not a party to the contract, and is in no position to invoke its protection."). Plaintiff does not allege that it is a party to the Industry-Wide Agreement ("IWA"), a collective bargaining agreement between the New York Hotel and Motel Trades Council, AFL-CIO ("Union") and the Hotel Association of New York City, Inc. ("HANYC").[7] *See* Compl. at ¶ 7. Nor does Plaintiff allege that it is a member of HANYC.[8]  In fact, Plaintiff admits that another entity, Interstate, is the "sole employer of all employees of the Roosevelt," and that Plaintiff is merely "responsible for funding." Compl. at ¶ 2. While Plaintiff asserts that it has "obligations" under the IWA, it is silent on the basis of such "obligations." [9] Compl. at ¶¶ 2, 7. Such vague funding obligations alone are insufficient to create a contractual relationship. *See  Russell v. Allied Textile Cos., Plc (in Re Carleton Woolen Mills, Inc.)*, 288 B.R. 7 (Bank Ct. D.of Maine 2003) (parent company was not party to collective bargaining agreement and thus despite having obligations under the law, was not obligated under the collective bargaining agreement at issue and therefore could not assert a Contracts clause

---

[7] Notably, neither party to the contract is a party to this litigation.  In fact, HANYC is a Plaintiff in a related case challenging the Severance Law, and did not assert a Contracts Clause claim. *See* 21-cv-8321 ECF 1.

[8] Defendants do not concede that if Plaintiff were a member of HANYC that a contractual relationship would exist. As Plaintiff does not allege that it is a member, legal argument on that point is not necessary.

[9] Notably, the complaint is silent as to whether Interstate is a member of HANYC or is otherwise bound by the IWA.

claim).[10] Consequently Plaintiff has failed to make a clear showing of its entitlement to even invoke the protections of the Contracts Clause.

### (b) <u>The Law Does not Substantially Impair the IWA</u>

Even if, *arguendo*, there were a contractual relationship, Plaintiff is unlikely to succeed on the merits of its Contracts Clause claim as the Severance Law does not substantially impair obligations under the IWA. "Substantial impairments are those that 'go to the heart of the contract,' 'affect [the] terms upon which the parties have reasonably relied,' or 'significantly alter the duties of the parties.'" *Ambrose v. City of White Plains*, 2018 WL 1635498, *18 (S.D.N.Y. 2018), *aff'd*, *Barr v. City of White Plains*, 779 F App'x 765 (2d Cir. 2019). (citing *Donohue v. Paterson*, 715 F. Supp. 2d 306, 318 (N.D.N.Y. 2010)). Any purported impairment of the IWA is not substantial for a variety of reasons. As to the required severance payments, the Law does not "render[]. . . invalid, or release[] or extinguish[]"obligations of the IWA. *Blaisdell*, 290 U.S. at 431 (1934). The Law does not target any provisions of the IWA specifically, and the  IWA provisions allegedly impacted, in actuality remain intact.[11] The severance payments are an additional worker protection from those already included in any contractual provision, which applies to hotels regardless of whether they are a party to the IWA.[12] *See Rhode Island Hospitality Ass'n* v. *City of Providence*, 667 F.3d 17, 41 (1st Cir. 2011) (finding ordinance requiring successor hospitality employers to

---

[10] The Court in *Russell* framed the issue as one of standing. Thus, Plaintiff also lacks standing to assert the Contracts Clause claim, because as a non-party to the contract, Plaintiff has not suffered an injury in fact as a result of the alleged interference with the contract.

[11] Plaintiff concedes that the arbitration provisions remain applicable, as it argues in support of this motion that the Union may invoke these provisions to enforce the Severance Law by seeking an emergency hearing before the Impartial Chairperson ("IC"). *See* P. Supp. Brief at 9 (ECF 30).

[12] In fact, to the extent severance pay under the IWA is being paid at the same time severance pay under the Law is being paid, the Law provides that the weekly pay be reduced by the amount of the IWA severance pay. *See* Severance Law § 2(b).

retain predecessor's employees for three months upon change of employer's identity did not violate provisions of the collective bargaining agreement). Legislatures must have the ability to implement workplace regulations to protect workers in vulnerable industries when they do not interfere with an express contractual provision. *General Motors Corp. v. Romein*, 503 U.S. 181, 186-87, 190 (1992); *California Grocers Assoc, v. City of Long Beach*, 2021 WL 3500960, at *5 (C.D. Cal. Aug. 9, 2021) (ordinance requiring "premium pay" to grocery workers "is not so dissimilar from other mandated benefits that it necessarily creates a substantial impairment").[13]

Whether the regulation was foreseeable is a relevant factor in assessing whether the Law is a substantial impairment. If the law at issue deals with a highly regulated area, it is typically deemed foreseeable. *See Energy Rsrvs. Grp.,* 459 U.S. at 413. The Severance Law regulates the realm of employee-employer relationships, an area that is highly regulated and thus was foreseeable. *See S. Cal. Healthcare Sys. v. City of Culver City,* 2021 WL 3160524 (C.D.Cal. July 23, 2021) (law requiring an increase in hourly salary for health care workers did not violate the Contracts Clause). "Occupational safety, collective bargaining, minimum wages, worker's compensation, and other areas of legislation have left few aspects of the workplace unregulated." *Gen.Offshore Corp. v. Farrelly*, 743 F. Supp. 1177, 1198 (D.V.I. 1990) (statute limiting employer's ability to discharge employee did not violate Contracts Clause because it was not a substantial impairment).

There are a number of other reasons this the Law is not a substantial impairment of any potential contract. The Law is temporary.[14] *See Buffalo Teachers Fedn. v. Tobe*, 464 F3d 362, 369

---

[13] Moreover, it is questionable whether Plaintiff's characterization that the arbitration provisions preclude private actions is supported by the law. *Cf Smith v Evening News Assn.*, 371 U.S. 195 (1962).

[14] The temporary nature of the Law also supports its reasonableness. *See Buffalo Teachers*, 464 F.3d at 372.

(2d Cir. 2006). It expires on June 22, 2021 and thus any rights and obligations created by the Law likewise cease. *See* Severance Law. This is notable in light of the approximately decade-long length of the IWA showing that a short-term obligation of at most 30-weeks does not interfere with a heart of the bargain. *Sveen*, 138 S.Ct. at 1822. Further, the scope of the purported infringement is limited. The Law only purportedly impairs two provisions[15] of a lengthy contract with 74 Articles. *See* ECF 1-2. Another reason is that Plaintiff does not allege that the provisions purportedly infringed are fundamental components of the IWA, or were a "primary inducement" to enter into the contract, nor could it as has not proven that it is even a party to the contract. *Buffalo Teachers,* 464 F.3d at 368 (emphasizing that the promise to pay was "the central provision" of the contract at issue); *Donohue v. Paterson*, 715 F. Supp. 2d at 318 (describing substantial impairments as those that "go to the heart of the contract"); *see also Melendez v. City of NY,* 2021 16 F.4th 992 (2d Cir. 2021) (Second Circuit crediting evidence in the record that landlords would not enter into leases without the Guaranty clause which the law at issue potentially impaired). Finally, any alleged impairment is avoidable. Plaintiff has a choice under the Law to either make severance payments or reopen. If Plaintiff reopens in accordance with the Law, there is no overlap or purported conflict with provisions of the IWA. Consequently, at best, the Law has a merely incidental and insubstantial impact on the IWA and thus does not implicate the Contracts Clause.

Plaintiff's reliance upon *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 247 (1978), in support of its argument that the Severance Law's impairment is substantial, fails. *See* P. Supp Memo at 6 (ECF 30). *Allied Structural* is readily distinguishable. In *Allied Structural*, the law at

---

[15] Plaintiff's Supplemental Memorandum of Law (ECF 30) addresses a third provision of the IWA that is purportedly impaired. However, the complaint does not allege such impairment, and thus it is not properly before the Court. Moreover, Plaintiff has not asserted in the complaint or otherwise, that it is in the process of converting to residential use, and thus the provisions Plaintiff complains about are inapplicable to Plaintiff.

issue retroactively changed the vesting requirements for the plaintiff's pension plan, a fundamental component of the pension plan, on which the company had relied in calculating its contributions to the plan over the course of the previous ten years. The Court found that the law at issue created "a completely unexpected liability in potentially disabling amounts." *Allied Structural*, 438 U.S. at 247. In contrast, the Severance Law does not impact any fundamental component of the IWA, nor alter the benefits provided under it. Instead, it merely provides temporary additional benefits to hotel employees, separate and apart from those provided under the IWA. "Simply adding a new obligation, by itself, does not constitute 'substantial' impairment." *Bd. of County Commrs. v. E. Prince Frederick Corp.*, 80 Md App 78, 559 A2d 822 (1989) (finding no substantial impairment when a new fee was required and when steps to avoid greater impairment could be taken). While it may be true that Plaintiff may not have anticipated paying this additional severance,[16] severance pay is not the "heart" of the contract, therefore the Law does not cause substantial impairment.[17]

### (c) **The Law Serves a Public Purpose and is Reasonable and Appropriate**

Even if such optional, temporary, limited and incidental impact were deemed "substantial" enough to trigger the remaining Contracts Clause analysis, Plaintiff's is still unlikely to succeed on its claim. The Law serves a legitimate public purpose—namely to provide financial assistance to laid off hotel service workers, a group that remains 60% unemployed, and help incentivize the reopening of the tourism industry, which plays a significant role in the economic well-being of the City. *See Barr v. City of White Plains*, 779 F. App'x 765 (2d Cir. 2019); *Buffalo Teachers*, 464

---

[16] Moreover, Plaintiff is silent as to what additional amount to be paid under the Law represents in the context of Plaintiff's overall assets and obligations.

[17] Moreover, this alleged impairment is even less intrusive than other worker protection laws or minimum labor standards that may permanently infringe upon terms of collective bargaining agreements, such as minimum wage. *See e.g. West Coast Hotel Co. v.Parrish*, 300 U.S. 379 (1937).

F.3d at 369. Further, the Law is a reasonable and appropriate means to reach those goals. *See Energy Reserves*, 459 U.S. at 411-12. "As is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *United States Tr. Co. v. New Jersey*, 431 U.S. 1, 22-23 (1977).

Here, incentivizing hotels to reopen is a valid public purpose in light of the economic city-wide benefits to the tourism industry, as are temporary severance payments to laid off employees to support a workforce that has been significantly economically harmed by the pandemic. Plaintiff's argument that other sectors, such as restaurants, retail and beauty salons, have also suffered does not undermine the reasonableness of the Law. *See* Compl. ¶111. Those sectors are not comparable, as they reopened much earlier than the hotel sector. As set forth in the legislative record, hotels have lagged behind these other sectors, resulting in hotel service workers not being able to return to their jobs. *See* Kane Decl. Ex. 1. With regard to the goal of reopening the hotel industry, the passage of the Law did, in actuality, incentivize some hotels to re-open. *See* Kane Decl. Ex. 6 (https://therealdeal.com/2021/10/25/paying-the-severance-would-have-cost-more-new-law-pushes-hotels-to-reopen/amp/ (last visited December 14, 2021)). Plaintiff's assertion that the hotel industry will be hurt by the Law is merely conclusory and self-serving.

This important public purpose of incentivizing the hotel industry to reopen in order to incentivize broader economic activity for the tourism sector, and to protect hotel workers is reasonable and appropriate. This is particularly true where, as here, the Severance Law does not impair a City contract because in those circumstances the Court "must accord substantial deference to the [City's] conclusion that its approach reasonably promotes the public purposes for which [it] was enacted." *Elmsford Apt. Assocs., LLC*, 2020 U.S. Dist. LEXIS 115354 at *36 (quoting *Sal Tinnerello & Sons, Inc. v. Town of Stonington*, 141 F.3d 46, 54 (2d Cir. 1998)); *see also Buffalo*

*Teachers*, 464 F.3d at 369. Likewise, during the COVID-19 pandemic, other courts have deferred to the legislative judgment of local legislatures in requiring hazard pay for certain grocery store employees. *Northwest Grocery Association*, 526 F.Supp.3d at 897. Just as the Court found protecting retention of grocery workers and the health of the community was a "significant and legitimate" public purpose, so is supporting a vulnerable population of hotel workers while incentivizing the revitalization of the tourism industry. Thus, the Court should "defer to legislative judgment as to the necessity and reasonableness of a particular measure" in cases where the state is not a contracting party." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 505 (1987).

Plaintiff's reliance upon *Melendez v. City of New York* in support of its argument that the Law is not reasonable or appropriate is misplaced.[18] *See* Compl. ¶ 111. Preliminarily, in *Melendez*, the Second Circuit determined that the plaintiffs in that case pled a plausible claim under the Contracts Clause, sufficient to survive the motion to dismiss, and did not rule on the plaintiffs' motion for a preliminary injunction, but instead remanded it to the district court. *See* 16 F.4th at 996, 1038. *Melendez* is also factually distinguishable. In *Melendez*, the Court adopted a "sliding-scale approach to the level of scrutiny to apply at the third step." Id. at 1052 (Carney, J., dissenting). Thus, having found that the plaintiffs plausibly plead a significant and permanent impairment of contract, heavily relying upon the evidence in the record that landlords would not enter into commercial leases without a guaranty clause, *Id.* at 1034, the Court closely scrutinized each component of the public goals of the Guaranty Law to assess whether it was narrowly tailored

---

[18] The City filed a petition for rehearing *en banc* in *Melendez*. It is the City's position that the additional factors required under the *Melendez* decision are inconsistent with long-standing Supreme Court and Second Circuit precedent providing for a deferential standard applied to social and economic legislation that does not impair a government contract. *See Melendez v. City of New York* (2d Cir. No. 20-4238), ECF No. 149.

to reach those goals. *See id*. at 1040-46. Here, however, even if the Court finds it necessary to reach this prong of the analysis, because the purported impairment is not significantly substantial for the reasons described above, a deferential standard of review is warranted.[19] As explained above, the Severance Law withstands such review.

### D.   The Severance Law is Not Unconstitutionally Vague

Plaintiff claims that the Severance Law violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution on its face and as applied to Plaintiff because the Law is purportedly unconstitutionally vague. *See* Compl. ¶¶ 115-116. The "void-for-vagueness" doctrine requires first that "laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and second that laws "contain minimal guidelines to govern law enforcement." *Thibodeau v. Portuondo*, 486 F.3d 61, 65-66 (2d Cir. 2007)(internal quotations omitted). Although "chiefly applied to criminal legislation[,]" *Arriaga v. Mukasey*, 521 F3d 219, 222-23 (2d Cir 2008), when applied to laws with civil or economic consequence, the law is subject to a less stringent vagueness test "because the consequences of imprecision are qualitatively less severe" when dealing with civil or economic consequences. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498-99 (1982). "Uncertainty in an economic regulation is not enough to render it unconstitutionally vague. 'It must be

---

[19] Plaintiff's request for discovery on this aspect of its Contracts Clause claim should be denied. First, this Court should decide the preliminary injunction motion based upon the briefing before it. The Law has been in effect since October 5, 2021, and Plaintiff's motion has been pending since November 18, 2021. Thus, any sense of urgency for a TRO has long passed. Moreover, Plaintiff has had significant time to fully brief a PI motion. Second, discovery as to whether the Law is reasonable and appropriate is not warranted. Plaintiff relies upon *Melendez* in its request for discovery, however, the Court directed greater discovery in the context of the denial of the motion to dismiss, not the preliminary injunction motion. Additionally, as argued above, a substantial-deference standard is applicable here and the Court does not second-guess the legislature under such standard. Thus discovery in an attempt to attack the legislature's judgment is meaningless. Finally, Plaintiff has not even established that it is a party to the IWA and thus there is no contractual relationship. Discovery on the last step of the analysis is unnecessary unless Plaintiff can meet its burden with regard to the first step. To the extent the Court intends to consider Plaintiff's request for discovery, Defendants reserve their rights to further oppose such discovery, and to seek discovery from Plaintiff.

substantially incomprehensible.'" *Ruiz*, 679 F. Supp 341 at 351 (quoting *Exxon Corp. v. Busbee*, *644 F.2d 1030* (5th Cir), *cert. denied*, 454 U.S. 932 (1981)).. "Facial challenges are generally disfavored" since courts are reluctant to rely on speculation, *Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir. 2010), or to formulate constitutional law that is broader than the particular facts before the Court. *See United States v. Raines*, 362 U.S. 17, 21 (1960).

Plaintiff is not likely to succeed on the merits of its due process challenges. Plaintiff goes to great effort to attempt to create ambiguity in the Law despite the commonsense understanding of the words and phrases they claim to be vague. For example, Plaintiff questions what it means to be a "covered hotel service employee," as well as the meaning of "permanently closed," "process," "per year of service," "similar pay," and "confidential employee."[20] Compl. ¶¶ 50-55. However, each of these terms or their parts can readily be defined in the dictionary, and have "meaning[s] that a person of ordinary intelligence would reasonably understand." *See Slattery v. Cuomo*, 2021 WL 1224008, *12 (N.D.N.Y. Mar. 31, 2021) (rejecting void-for-vagueness challenge based on purported confusion as to whether unpaid interns and volunteers would be deemed "employees" within meaning of statute) (appeal pending). *See also United States v. Peters*, 732 F.3d 93, 99 (2d Cir. 2013) ("When a term in a statute is undefined, we are to give it its ordinary meaning."); *United States v Yücel*, 97 F. Supp 3d 413, 420 (S.D.N.Y. 2015) (applying dictionary meaning to allegedly vague terms and rejecting void for vagueness claim). As Plaintiff cannot demonstrate 'no set of circumstances exists under which the law would be valid[,]'" its facial

---

[20] As Plaintiff admits, federal labor law defines "confidential employee," Compl. 55. *See* 22 U.S.C. § 4102(6) (defining "confidential employee"). As this is a term typically used in labor relations, there is no reason to believe that any other definition would be applicable to the Severance Law when defining categories of workers.

challenge fails.[21] *Dickerson,* 604 F.3d at 743 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Nor can Plaintiff succeed on its "as-applied" claim. Not only has the Law not been enforced against Plaintiff, Plaintiff does not even attempt to allege how the supposed "vague" terms cause ambiguity in its attempt to comply with the Law.[22] *See Copeland v. Vance*, 893 F.3d 101, 110-11 (2d Cir. 2018)(stating that enforcement is the essence of an as-applied claim); *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2014)(treating a "pre-enforcement" claim as facial rather than as-applied).

**E.   Plaintiff's Substantive Due Process Rights Have Not Been Violated**

To the extent Plaintiff is also asserting a substantive due process claim, *see* Compl. at ¶ 117, such claim also is not likely to succeed. "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). Under rational basis review, "[a] court is 'required to uphold' a challenged statutory provision 'if there is any reasonably conceivable state of facts that could provide a rational basis' for it." *Vizio Inc. v. Klee,* 2016 WL 1305116, *26 (D. Conn. Mar. 31, 2016) (quoting *Sensational Smiles, LLC v. Mullen,* 793 F.3d 281, 284 (2d Cir. 2015). Plaintiff has the burden of demonstrating that the Severance Law is "'arbitrary,' 'conscience-shocking,' or

---

[21] It is not clear whether a facial void for vagueness challenge may be made outside the context of the First Amendment. However, the above standard is often applied. In addition, some Courts apply a slightly different standard, requiring the proponent of the argument to demonstrate that "the law is 'permeated' with vagueness, and, perhaps, that it infringes on a constitutional right and has no *mens rea* requirement." *Dickerson*, 604 F.3d at 744.

[22] Indeed it is unclear whether Plaintiff is in compliance with the Law, despite that it has been effective for over two months.

'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" *Ferran v. Town of Nassau*, 471 F.3d 363, 370 (2d Cir. 2006) (quoting *Lowrance v. C.O. S. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)). Plaintiff cannot meet this burden.

The Severance Law is intended to provide additional financial assistance to laid off hotel service employees, a sector of workers significantly hurt by the pandemic that is still 60% unemployed. *See* Kane Decl. Ex. 1 at 24. It also is directed at encouraging the reopening of the hotel industry, which has lagged despite the increase in tourism in the past year, and is a significant portion of the City's revenue. *See id.* at 23. Plaintiff's attempt at attacking these rational, and legitimate basis for the Law is ineffective.

Plaintiff's arguments for why the Law is not rational boil down to the fact that Plaintiff believes the Law is overinclusive in some regards, under-inclusive in others, not sufficiently studied, and is not the most effective method to reach its stated goals. However, as the Second Circuit explained, "[w]e will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, because the problem could have been better addressed in some other way, or because the statute's classifications lack razor-sharp precision." *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997) (citations omitted). Nor does due process require that scientific evidence support the legislative action. *Id.* at 712. Thus, as Plaintiff failed to demonstrate that there are no "plausible rationales" for the Law, it has failed to meet its burden and is not likely to succeed on its substantive due process claim. *Id.* at 712.

## F. <u>Equal protection</u>

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, (1985). *See also Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, (2000) (purpose of the Equal Protection Clause is to secure against intentional and arbitrary discrimination). As

Plaintiff is not part of protected class, Plaintiff's Equal Protection claim is pursuant to a class-of-one theory. *See* Compl. at ¶ 132; *See also Vill. of Willowbrook,* 528 U.S. at 564. To prevail on such a claim, a plaintiff must demonstrate that they were "treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Plaza Motors of Brooklyn,* 2021 WL 222121, *5 (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).

Plaintiff has failed to identify similarly situated comparators. While it is not disputed that "dining, arts, and entertainment, construction etc. all suffered during the pandemic[,]" Compl. ¶134, they did not all suffer to the same degree or in the same way that the hotel/tourism industry has suffered, and thus are not similarly situated. As set forth in the legislative history of the law, 60% of hotel service workers remain unemployed. *See* Kane Decl. Ex. 1. Plaintiff has not alleged facts to support that the same circumstances apply to the other industries it discusses.[23]

Even assuming, *arguendo*, that Plaintiffs have sufficiently alleged that they are similarly situated to their comparators, Plaintiff's class-of-one claim still fails because they have not plead that their treatment is intentionally discriminatory. *See Plaza Motors of Brooklyn,* 2021 WL 222121, *6. Further, supporting laid off hotel workers and incentivizing the revitalization of the hotel and tourism industry, which has lagged behind other industries, is a rational basis for treating hotels differently than other industries. *See Capitol Pedicabs, LLC. v. City of New York*, 2017 U.S. Dist. LEXIS 163994 (S.D.N.Y. 2017). While Plaintiff may disagree with Defendants' methodology, "the Supreme Court has emphasized that 'rational-basis review in equal protection analysis is ***not*** a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Vizio,* 2016 WL 1305116 (emphasis in original) (quoting *Heller v. Doe* , 509 U.S. 312, 319 (1993)).

---

[23] Although Plaintiff complains of the classifications within the law, specifically that the Law applies to 100 room hotels and hotels with 99 rooms, and hotels that recall 24% of their workers but not 25%, Plaintiff lacks standing to assert such arguments. Plaintiff has over 1000 hotel rooms and has not plead that it has reopened whatsoever.

**G.**   **Plaintiff is not Likely to Succeed on its Claim of ERISA Preemption**

ERISA does not preempt all state laws relating to employee benefits. It preempts only laws relating to employee benefit *plans*. *Fort Halifax Packing Co. Inc.* v. *Coyne*, 482 U.S. 1, 8 (1987) (explaining that ERISA's preemption clause was designed to avoid subjecting employee benefit plans to different and potentially conflicting requirements in different states). Therefore, ERISA does not preempt a local law requiring an employer to pay a severance benefit unless that law also requires the employer to establish an ERISA employee benefit plan.

Contrary to Plaintiff's allegations (Compl. at ¶61), the Severance Law does not obligate hotel employers to establish such a plan. An employer's obligation to pay severance benefits qualifies as an ERISA plan "only where such an undertaking or obligation requires the creation of an ongoing administrative program." *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 75 (2d Cir. 1996). The Second Circuit has identified three factors to be used as "analytic tools" in determining whether a particular obligation requires such a program: (1) whether the employer is "required to analyze the circumstances of each employee's termination separately in light of certain criteria;" (2) "whether the employer's undertaking or obligation requires managerial discretion in its administration;" and (3) "whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits." *Okun v. Montefiore Med. Ctr.*, 793 F.3d 277 (2d Cir. 2015) (quoting *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 566 (2d Cir. 1998)).

Applying these factors, courts have found an employer's severance obligations to require the establishment of an ongoing administrative program where the employer must make individualized, subjective determinations as to each employee's eligibility and/or payment amount, and the employer must exercise such discretion over an extended period of time. For example, in *Okun*, the Court held that the employer's "multi-decade commitment to provide

severance benefits to a broad class of employees under a wide variety of circumstances" was an ERISA plan because its administration required an "individualized review" of eligibility to be conducted on a "relatively regular basis," 793 F.3d at 280. The Court explained that the breadth and unlimited duration of the program meant that the employer would face "periodic demands on its assets" that would "require long-term coordination and control" *id.* (quoting *Fort Halifax*, 482 U.S. at 12)). *See also Schonholz*, 87 F.3d at 76 (employer's severance plan was ERISA plan where employer was required to make subjective determinations, including as to whether each employee was "making a reasonable and good faith effort to obtain suitable employment elsewhere").

By contrast, courts have held that severance obligations do not constitute ERISA plans when they are to be administered over a limited period of time, and do not require more than minimal discretion to administer. *James v. Fleet/Norstar Fin. Group*, 992 F.2d 463, 468 (2d Cir. 1993). In *James*, for example, the Second Circuit held that an employer's undertaking to pay 60-days additional pay to employees who stayed on during a planned consolidation was not an ERISA plan where the employer was required to make only "clerical determination[s]" as to the employees' eligibility for payment and "arithmetic calculations" as to the amount of payment after required deductions. *Id.* The Court explained that because the payments and the determinations needed to make them would be made during a short period of time and in relation to a single event, no "ongoing administrative program" would be needed "effectuate" the payments. *Id.* at 467-68.

In this case, the limited determinations that the employer must make in order to comply with the Severance Law, such as whether an employee was a managerial, supervisory or confidential employee or otherwise exercised control over management of the hotel, and whether the employee was laid off due to a closure or mass layoff, are the types of determinations would be inherent in the administration of any severance program, and require only minimal discretion.

*See Atkins v. CB&I, L.L.C.*, 991 F.3d 667, 671 (5th Cir. 2021) (determination of whether employee was "laid off in a reduction-in-force" required only "some exercise of judgment"); *Golden Gate Rest. Ass'n v. County of San Francisco*, 546 F.3d 639, 651 (9th Cir. 2008) (compliance with law requiring employers to make payments for certain employees, where "managerial, supervisorial, or confidential employees" were excluded, did not require more than a "modicum of discretion").

The amount of the payment is set forth in the Law: $500 per week. Therefore, unlike in *Okun*, the employer has no discretion in determining the amount. The only potential individualized calculation required is a straightforward "arithmetical calculations" like those required in *James*—subtraction of any other amounts the employer had already provided or owed for the same week. *See Nowak v. Int'l Fund Servs. (N.A.),*, 2009 WL 2432715, *2 (S.D.N.Y. Aug. 7, 2009) (holding severance undertaking not ERISA plan where there was no discretion as to timing, form or amount of payments).

Moreover, the Law is only in effect for approximately eight months, and the employer will have no further obligations following its expiration. Therefore, any minimal discretion a hotel employer may need to exercise in issuing payments would be limited in both time and scope and would not require establishment of an ongoing administrative program. And no reasonable employee would perceive the law as creating an ongoing commitment by the employer to provide benefits. *Taverna v. Credit Suisse First Boston (USA)*, 2003 WL 255250, *3 (S.D.N.Y. Feb. 4, 2003) ("no employee could reasonably believe" that employer was making an "ongoing commitment to provide benefits" based on agreements that had a specified term). Therefore, the Law does not meet the criteria for determining whether a severance obligation constitutes an ERISA plan.

## H.   Plaintiff is not Likely to Succeed on its NLRA Preemption Claim

The National Labor Relations Act (NLRA) does not contain an express preemption provision; however, courts have interpreted it as establishing two forms of implied preemption, commonly known as *Garmon* and *Machinists*. Neither form of preemption applies here.

*Garmon* preemption "protects the primary jurisdiction of the [National Labor Relations Board] to determine in the first instance what kind of conduct is either prohibited or protected by the NLRA." Met *Life*, 471 U.S. at 749. Therefore, under the *Garmon* Rule, a state or local law that purports to "regulate or prohibit . . . conduct" that is "subject to the regulatory jurisdiction of the NLRB" will be preempted. *Id.* at 748-49. In this case, the Severance Law does not purport to regulate or prohibit any conduct that is within the NLRB's jurisdiction.

*Machinists* preemption applies to laws that "regulate[] the use of economic weapons that are recognized and protected under the NLRA such that the state or local government has entered 'into the substantive aspects of the bargaining process to an extent Congress has not countenanced.'" *Rondout Elec., Inc. v. N.Y. State DOL*, 335 F.3d 162, 167 (2d Cir. 2003) (quoting *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 149 (1976)). It does not apply to local laws that establish "minimum employment standards that labor and management would otherwise have been required to negotiate from their federally protected bargaining positions," commonly known as minimum labor standards. *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 751 (1985). Such standards do not conflict with the goals of the NLRA because they "affect union and nonunion employees equally," "neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA," and fall within "the broad authority" of local "police powers to regulate the employment relationship to protect workers." *Id.* at 755, 757. The Severance Law establishes such

24

a minimum standard and is therefore not preempted. *See Fort Halifax*, 482 U.S. 1 (upholding state law requiring severance payments as minimum labor standard).

Plaintiff makes several arguments as to why the Law should not qualify as a minimum labor standard, each of which fails. *First*, Plaintiff argues that the Law cannot be a minimum labor standard because it has an "impermissibly narrow scope." Compl. ¶76. This argument has been rejected by the Second Circuit, which held, in *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 86, n.8 (2d Cir. 2015), that *Machinists* preemption does not "eliminate state authority to craft minimum labor standards for particular regions or areas of the labor market." *Id. Second*, Plaintiff argues that it cannot be a minimum labor standard because it "treats union and non-union employees differently." Compl. ¶77. But examination of the text of the law reveals no such differential treatment.[24] *Third*, Plaintiff argues that the Law is too burdensome.[25] Compl. ¶¶ 82-85. However, like the law upheld in *Concerned Home Care* providers, the Law merely requires employers to make certain minimum payments to [in this case, former] employees.[26] *See Rondout*, 335 F.3d at 168 (stating that imposition of additional costs on employer is "insufficient to invoke NLRA preemption").

---

[24] The provisions that Plaintiff argues impose differing treatment— (*see* Compl. ¶¶ 78-80) actually serve to *prevent* unequal treatment by preserving the background status quo for all employees.

[25] To the extent Plaintiff argues that the Law is not a true minimum labor standard because the hotel workers' union lobbied the City Council in favor of it (Compl. ¶¶ 72-73), this argument also fails. *See*, e.g., *Concerned Home Care Providers*, 783 F.3d at 87.

[26] Plaintiff's reliance *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119 (7th Cir. 2008), for its argument that the Law is not a minimum labor standard is misplaced. As an initial matter, the Second Circuit has questioned whether *Shannon* was correctly decided. *See Concerned Home Care Providers*, 783 F.3d at n.8. In any event, the amendment at issue in *Shannon* was materially different from the Law at issue here. *See id.*

Dated:      New York, New York
               December 14, 2021

GEORGIA M. PESTANA
Corporation Counsel
  of the City of New York
Attorney for Defendant HPD
100 Church Street
New York, New York 10007
(212) 356-4371


*Melanie V. Sadok*
By:  Melanie V. Sadok
      Rachel B. Kane
      Susan A.M. Turk
Assistant Corporation Counsel